**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-CV-24966-RAR**

**KAREL LEONARDO RAMOS**,

Petitioner,

v.

**WARDEN OF THE MIAMI FEDERAL DETENTION CENTER FDC**, *et al*.,

Respondents.
_______________________________________/

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

**THIS CAUSE** comes before the Court upon Petitioner Karel Leonardo Ramos's Petition for Writ of Habeas Corpus ("Petition"), [ECF No. 1], filed on July 22, 2026. Petitioner alleges that he has been unlawfully committed to detention and seeks that the Court order his immediate release. *See* Pet. ¶ 1, Prayer for Relief. The Court having reviewed the Petition,[1] the relevant submissions, and applicable law, it is hereby

**ORDERED AND ADJUDGED** that the Petition is **DENIED** as set forth herein.

**BACKGROUND**

Petitioner is a native of Cuba who first entered the United States on April 11, 1995, becoming a Lawful Permanent Resident in 1996. Pet. ¶ 18; Resp. at 1. Between 2002 and 2010, Petitioner was arrested eleven times and convicted eight times. Resp. at 3–4. Petitioner was then taken into Immigration and Customs Enforcement, Enforcement and Removal Operations ("ICE

[1] On August 10, 2026, Respondents filed a Response to Order to Show Cause and Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Response"), [ECF No. 6]. Petitioner subsequently filed a Reply to Respondents' Response to Order to Show Cause ("Reply"), [ECF No. 8]. Accordingly, the Petition is fully briefed and ripe for review.

ERO") custody in August 2011 and an Immigration Judge ordered him removed to Cuba in September 2011. *Id.* at 4. On December 14, 2011, Petitioner was released from custody on an Order of Supervision ("OSUP"). *Id.*

Between 2012 and 2023 Petitioner was arrested another nine times, resulting in four more convictions. *Id.* at 5–6. This included a conviction in 2017 for burglary of an unoccupied dwelling, grand theft in the 3rd degree, and burglary of a dwelling/structure causing damage of more than $1,000. *Id.* at 5.

On June 25, 2026, ICE ERO encountered Petitioner following a traffic stop and took him into custody. *Id.* at 6. The following day ICE ERO issued a warrant for his arrest. *Id.*; Exhibit E, [ECF No. 6-5]. Petitioner was not given an informal interview at the time of his re-detention. Pet. ¶ 58. On August 10, 2026, ICE ERO formally revoked Petitioner's OSUP because his 2017 conviction "violated a condition of his release." Resp. at 6. That same day, ICE conducted an informal interview and Petitioner "inform[ed] ICE ERO that he had an attorney, asked ICE ERO to speak to the attorney, stated he had been in custody for over 40 days, and that his due process clause was violated." *Id.* Petitioner is currently detained at the Miami Federal Detention Center in Miami, Florida. Pet. ¶ 12; Resp. at 6; [ECF No. 10] ¶ 1.

On July 22, 2026, Petitioner filed this action requesting the Court (1) "[g]rant the writ of habeas corpus and order Petitioner's immediate release from immigration custody, on the ground that his continued detention exceeds statutory authority, is inconsistent with a binding nationwide class judgment, and violates the Due Process Clause of the Fifth Amendment;" (2) "[a]ward Petitioner reasonable attorney's fees and costs pursuant to applicable law, including the Equal Access to Justice Act, 28 U.S.C. § 2412, to the extent permitted by law;" and (3) "[g]rant such other and further relief as the Court deems just and proper." Pet., Prayer for Relief.

## LEGAL STANDARD

Under 28 U.S.C. § 2241, federal district courts "within their respective jurisdictions" have the authority to hear applications for habeas corpus by any person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to be within the "core of habeas corpus," a petitioner must seek "either immediate release from that confinement or the shortening of its duration." *Prieser v. Rodriguez*, 411 U.S. 475, 484, 489 (1973). Section 2241 authorizes federal courts to hear challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (noting "28 U.S.C. § 2241[] confers jurisdiction upon the federal courts to hear" challenges to the "lawfulness of immigration-related detention").

## ANALYSIS

Petitioner maintains that his detention violates *Zadvydas v. Davis*, 533 U.S. 678 (2001), and the Due Process Clause of the Fifth Amendment because "there is no significant likelihood of removal in the reasonably foreseeable future." Pet., Counts I–IV, VII–VIII. Petitioner also maintains that the revocation of his OSUP "constitute[s] arbitrary governmental action in violation of the Due Process Clause of the Fifth Amendment" and that Respondents violated the Administrative Procedure Act ("APA") when "ICE failed to follow the procedural requirements in its own regulations when revoking his OSUP." Pet., Counts V–VI, IX. Respondents assert that the Court lacks jurisdiction to consider Counts VII and IX pursuant to 8 U.S.C. § 1252(g). Resp. at 13–16.

Accordingly, there are four questions before the Court: (1) whether the Court has jurisdiction to review all counts in the Petition; (2) whether Petitioner is lawfully detained pursuant

to *Zadvydas*; (3) whether that detention comports with due process; and (4) whether the revocation of Petitioner's OSUP comports with applicable regulations and the Constitution.

**I. The Court has jurisdiction to consider the Petition.**

Respondents argue that 8 U.S.C. § 1252(g) bars this Court's consideration of Counts VII and IX. *See* Resp. at 13–16. Specifically, Respondents maintain that "[t]he Secretary of Homeland Security's decision to *commence removal proceedings*, including the decision to detain an alien pending such removal proceedings, squarely falls within this jurisdictional bar." Resp. at 14.

Although a jurisdiction stripping provision such as § 1252(g) may preclude judicial review, it is not applicable here. Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders . . . ." 8 U.S.C. § 1252(g). The Supreme Court has given § 1252(g) a "narrow reading," emphasizing that it does not cover "all claims arising from deportation proceedings" or impose "a general jurisdictional limitation." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 486–87 (1999). In the context of removal proceedings, the Eleventh Circuit has held that "challenges [to] the methods that ICE use[s] to detain [Petitioner] *prior* to his removal hearing . . . [are] foreclosed by § 1252(g)[,]" while "a claim that arises from the decision to indefinitely detain an alien—and thus, by definition, never to remove him—cannot arise from the decision to execute removal." *Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1204–05 (11th Cir. 2016) (emphasis added); *see also Linares v. Dep't of Homeland Sec.*, 529 F. App'x 983, 984 (11th Cir. 2013) ("[A petitioner's] challenge to his continued detention is . . . distinct from a challenge to his removal order.").

The first claim Respondents argue is barred by § 1252(g), Count VII, alleges that Petitioner's continued detention "violates the Due Process Clause of the Fifth Amendment." Pet.

¶ 42. The second claim, Count IX, alleges that Respondents violated the APA and "due process because ICE failed to follow the procedural requirements in its own regulations when revoking [Petitioner's] OSUP." Pet. ¶ 51.

Section 1252(g) is not applicable to either claim because in both Petitioner is challenging his continued detention, not the order of removal itself. *See Grigorian v. Bondi*, 824 F. Supp. 3d 1243, 1249 (S.D. Fla. 2025) ("The Court does not believe that § 1252(g) bars review of this case to the extent [Petitioner] seeks only substantive review of the underlying legal bases for his detention." (citations omitted)); *Hernandez v. Noem*, No. 26-00515, 2026 WL 809576, at *1 (M.D. Fla. Mar. 24, 2026) ("Indeed, if the Government's sweeping interpretation were correct, *Zadvydas*—the seminal case where the Supreme Court held it could consider a habeas challenge to unlawful, prolonged immigration detention—would have been stopped in its tracks before ever reaching the merits."). As Petitioner notes in his Reply, he "does not ask this Court to invalidate his removal order, select the country of removal, or direct DHS whether to execute that order. He invokes 28 U.S.C. § 2241 to challenge the legality of his present custody and the procedure by which his supervised release was revoked." Rep. at 7. Accordingly, the Court has jurisdiction to hear all of Petitioner's claims.

**II. Petitioner is lawfully detained pursuant to 8 U.S.C. § 1231 and his detention comports with due process.**

Petitioner claims that he has been detained without a significant likelihood of removal in the reasonably foreseeable future, which is in violation of his due process rights. Pet. ¶¶ 24–33, 39–47. Respondents, however, counter that Petitioner has been in custody shorter than necessary to state a claim for unreasonable detention. Resp. at 9–10. The Court agrees with Respondents.

The post-removal-period detention statute, 8 U.S.C. § 1231, provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a

period of 90 days." 8 U.S.C. § 1231(a)(1)(A). In *Zadvydas*, the Supreme Court held that § 1231, "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." 533 U.S. at 689. As this Court has explained, "[t]o avoid reading the statute as violating the Fifth Amendment Due Process Clause and to create uniform standards for evaluating challenges to post-removal-period detention, the Supreme Court held that any detention of six months or less was a 'presumptively reasonable period of detention,' and that 'an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Grigorian v. Bondi*, No. 25-22914, 2025 WL 1895479, at *7 (S.D. Fla. July 8, 2025) (quoting *Zadvydas*, 533 U.S. at 701). Thus, to state a *Zadvydas* claim, a petitioner must show (1) "post-removal order detention in excess of six months" and (2) "a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

Petitioner's *Zadvydas* claim is premature because it does not violate the implicit six-month period read into the post-removal-period detention statute under *Zadvydas*. Currently, Petitioner has been detained since June 25, 2026, totaling roughly 105 days in custody. Pet. ¶ 5. The six-month clock under *Zadvydas* measures exclusively the time a petitioner spent in "actual lockup, not supervised freedom." *Gonzalez v. Parra*, No. 26-00532, 2026 WL 1102764, at *2 (M.D. Fla. Apr. 23, 2026) ("Because *Zadvydas* clearly involved *detention* of a petitioner during the presumptively reasonable period, it defies common sense to suggest that *Zadvydas* time can run while a petitioner is not in custody." (quoting *Cheng Ke Chen v. Holder*, 783 F. Supp. 2d 1183, 1192 (N.D. Ala. 2011))); *see also Akinwale*, 287 F.3d at 1052 ("[T]o state a claim under *Zadvydas* the alien . . . must show post-removal order *detention* in excess of six months [and] also must

provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." (emphasis added)). Petitioner's confinement remains short of the six-month mark, and he sits squarely within the presumptively reasonable window. *See Guerra-Castro v. Parra*, No. 25-22487, 2025 WL 1984300, at *4 (S.D. Fla. July 17, 2025) (finding a habeas petition "premature" because "Petitioner has not been detained for more than six months"); *Hidalgo v. Warden Fla. Soft S.*, No. 26-01754, 2026 WL 1782082, at *2 (M.D. Fla. June 22, 2026) (holding Petitioner "cannot satisfy the initial temporal requirement" because "he has been detained for less than six months," so "he remains within the window in which his detention is presumptively reasonable"). Accordingly, Petitioner has failed to satisfy the first prong of his *Zadvydas* claim.

Since Petitioner has failed to show that his detention exceeds the presumptively reasonable period, the Court need not determine whether he has satisfied the second prong of *Zadvydas*—the likelihood of his removal in the foreseeable future. *Romero v. Warden, Fla. Soft Side S.*, No. 26-01142, 2026 WL 1251690, at *2 (M.D. Fla. May 7, 2026) ("Until the six-month *Zadvydas* period concludes, detention is presumptively reasonable, and any due process claim is not ripe"). Until that clock actually runs out, the Government retains the constitutional authority to hold Petitioner. *Hidalgo*, 2026 WL 1782082, at *2; *Milot v. Fla. Soft Side S.*, No. 26-01194, 2026 WL 1295880, at *3 (M.D. Fla. May 12, 2026).

**III. The revocation of Petitioner's OSUP comports with due process and the APA.**

Petitioner originally contended that Respondents "violated due process [and the APA] by failing to follow its own procedures and regulations in revoking [Petitioner's] OSUP" because Respondents "g[ave] no explanation for his re-detention, no informal interview at the time of re-detention, and no opportunity to contest the grounds for revoking his supervision . . . ." Pet. ¶¶

48–58. However, as stated in the Response, Respondents took steps to cure this procedural defect. Respondents conducted an "informal interview regarding the reason for the revocation, and . . . afford[ed] Petitioner an opportunity to respond to the reasons of his OSUP revocation letter" on August 10, 2026—the same day Respondents filed their Response. Resp. at 13. In his Reply, Petitioner maintains his challenge to his OSUP's revocation, arguing that "Respondents cannot satisfy a requirement of prompt process merely by eventually providing an interview after weeks of detention and after federal litigation has begun." Rep. at 3.

Before turning to the adequacy and timing of Petitioner's informal interview, Petitioner notes that Respondents are inconsistent in what they contend is the basis for Petitioner's OSUP revocation. Rep. at 5–6. Respondents state that "ICE revoked Petitioner's OSUP . . . for a violation of its conditions, and to enforce the removal order pending against him" pursuant to § 241.4(1)(2). Resp. at 11. Respondents also point to the differences between § 241.4(l)(1) and § 241.4(l)(2) to argue that "ICE is not required to conduct a custody review under these procedures."[2] Resp. at 11 (quotations omitted). But Petitioner's Notice of Revocation of Release dated August 10, 2026 states that Petitioner's "release has been revoked pursuant to 8 C.F.R. § 241.13(i)" because Petitioner violated a condition of his release, namely that in 2017 he was "convicted in the Circuit Court at Dade County, Florida for the offense of Grand Theft 3rd degree/vehicle and . . . Burglary of an unoccupied conveyance." Exhibit F, [ECF No. 6-6]; *see also* Resp. at 6 ("ICE ERO . . . revoked his OSUP[] pursuant to 8 C.F.R. § 241.13(i) . . . .").

Regardless of whether Respondents revoked Petitioner's OSUP under § 241.13(i), § 241.4(1)(1), or § 241.4(1)(2), Petitioner was entitled to an informal interview to be notified of

[2] In contending that no custody review was necessary, Respondents also state that ICE issued Petitioner a Notice of Removal to Cuba on June 5, 2020, citing to Exhibit C. Resp. at 12. But Exhibit C contains no such Notice of Removal from June 5, 2020. Rather, Exhibit C is Petitioner's Order of Removal from September 15, 2011. *See* [ECF No. 6-3].

the reasons for revocation and afforded an opportunity to respond. § 241.13(i)(3) ("Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification."); § 241.4(1)(1) ("The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification."); *Grigorian*, 824 F. Supp. 3d at 1252 (holding that "the notice and interview requirement stated in § 241.4(l)(1) applies to revocation under § 241.4(l)(2)").

Upon review of the record, the Court is persuaded that Petitioner was provided an informal interview that comports with ICE's own regulations and procedural due process. Both parties agree that Respondents provided Petitioner an informal interview on August 10, 2026. Resp. at 13; Rep. at 2. At this interview, "Petitioner made a statement, informing ICE ERO that he had an attorney, asked ICE ERO to speak to the attorney, stated he had been in custody for over 40 days, and that his due process clause was violated." Rep. at 6; *see also* Decl. of Deportation Officer Kevin Dorleus, Ex. B, [ECF No. 6-2] ¶ 31. But according to Petitioner, Respondents' failure to provide an informal interview for more than forty days cannot be cured by the subsequent interview. Rep. at 1–5 ("The issue is not simply whether an interview eventually occurred; it is whether the required opportunity to contest revocation was provided promptly after Petitioner's return to custody.").

The Eleventh Circuit has held that "even where a governmental entity fails to follow its own regulations providing for procedural safeguards, it is not a denial of due process if the individual was provided with adequate notice such that his rights were not prejudiced." *Sharma v. Drug Enf't Agency*, 511 F. App'x 898, 902 (11th Cir. 2013); *see also Surovtsev v. Noem*, No.

25-00160, 2025 WL 3264479, at *9 (N.D. Tex. Oct. 31, 2025) ("[E]ven if the respondents did violate the[] procedures [requiring notice, informal interview, and opportunity to respond and present limited evidence], any error was harmless in light of the expanded procedure that [Petitioner] has received throughout this case."). Petitioner's eventual informal interview constitutes an adequate post-deprivation remedy available to cure the violation, such that Petitioner was not wholly deprived of his due process rights. *See Sharma*, 511 F. App'x at 902. The factual circumstances here are unlike those addressed by this Court in *Grigorian*, where petitioner had *never* "received a meaningful opportunity to be heard or to contest the basis for his re-detention." *Grigorian*, 824 F. Supp. 3d at 1256. And while "the eventual promise of a formal review [is not] enough to cure a due process violation[,]" *see id.*, Petitioner here was actually given an informal interview. Thus, Petitioner's reliance on *Grigorian* is inapposite.

Petitioner also contends that an informal interview more than forty days after detention "cannot satisfy a [statutory] requirement of *prompt* process . . . ." Rep. at 3 (emphasis added); *see* § 241.13(i)(3) ("The Service will conduct an initial informal interview *promptly* after his or her return to Service custody . . . ." (emphasis added); § 241.4(1)(1) ("The alien will be afforded an initial informal interview *promptly* after his or her return to Service custody . . . ." (emphasis added)). Some courts have found a specified delay to be sufficient to establish a statutory violation. *See e.g., Jean-Baptiste v. Mullin*, No. 26-00484, 2026 WL 1109483, at *2 (M.D. Fla. April 24, 2026) (granting habeas petition where Petitioner's informal interview occurred "nearly three months after ICE detained [her]"); *Torres v. Warden*, No. 26-24264, 2026 WL 2469978, at *6 (S.D. Fla. Aug. 24, 2026) (granting habeas petition on the basis that an informal interview "more than four months after Petitioner's re-detention . . . is plainly not 'prompt,' as the applicable regulation contemplates"); *but see Mesa v. U.S. Dep't of Homeland Sec.*, No. 26-26096, 2026 WL

2792831, at *3 (S.D. Fla. Sep. 15, 2026) (denying habeas petition on the basis that, despite a 52-day delay in receiving an informal interview, "Petitioner's rights were not prejudiced during that gap").

Petitioner's informal interview occurred "more than forty days" after detention. Rep. at 2. While § 241.13(i) and § 241.4(1) both state that an informal interview must occur "promptly," the Court need not define the parameters of the statutory term here as the delay in Petitioner's informal interview does not rise to the level of a due process violation. *See Sharma*, 511 F. App'x at 902 ("[T]here is no due process violation where the government has made available a post-deprivation remedy sufficient to correct an alleged procedural deprivation."). Indeed, the timeliness of Petitioner's informal interview "would not have a material effect on prior determinations nor would it change the criminal charges and convictions that are the heart of Petitioner's removability." *Mesa*, 2026 WL 2792831, at *3; *see* Exhibit F, [ECF No. 6-6] (citing Petitioner's 2017 conviction as the basis for the revocation of his supervised release).

**CONCLUSION**

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Petitioner Karel Leonardo Ramos's Petition for Writ of Habeas Corpus, [ECF No. 1], is **DENIED**.

2. All deadlines are **TERMINATED**, and any pending motions are **DENIED as MOOT**.

3. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 8th day of October, 2026.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**